IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JAMES T. LUTHER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:16-cv-00013 ) |
| WELLS FARGO BANK, N.A., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

Defendants Wells Fargo Bank ("Wells Fargo") and Atlantic Law Group ("Atlantic") move to dismiss James T. Luther's ("Luther") complaint with prejudice under Federal Rules of Civil Procedure 12(b)(6), Rule 8(a) (Dkt. No. 4), and also seek a pre-filing injunction. Dkt. No. 6. The motions will be **GRANTED**.

**Procedural History and Facts**

This case represents Luther's third attempt to forestall the foreclosure of his home located at 2194 Dogwood Lane in Fieldale, Virginia. Luther filed his first complaint against Wells Fargo on December 7, 2011 alleging fraud, violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605. See Luther v. Wells Fargo, Case No. 4:11cv00057 ("the 2011 case" or "4:11cv00057"). The court entered an order adopting the recommendation of the magistrate judge and dismissing the case with prejudice on September 25, 2012. See id. at Dkt. No. 45. Luther filed a second lawsuit on December 17, 2013 against Wells Fargo and Atlantic alleging violations of the Fair Debt Collection Practices Act, wrongful foreclosure, fraud, and mail fraud. See Luther v. Wells Fargo, Case No. 4:13cv00072 ("the 2013 case" or "4:13cv00072"). The court again adopted the

1

magistrate judge's recommendation and dismissed the case with prejudice. See id. at Dkt. Nos. 60 & 61. Luther filed a motion to reconsider pursuant to Rule 59(e), which the court denied. See id. at Dkt. Nos. 64 & 65. Luther then appealed the 2013 case to the Fourth Circuit Court of Appeals and that court affirmed the district court's decision on December 2, 2015. See id. at Dkt Nos. 74 & 75. Luther next filed a motion to set aside the judgment in both cases on February 10, 2016. See id. at Dkt. No. 81. Luther's motion was denied on February 11, 2016. See id. at Dkt. Nos. 83 & 84.

In the instant case, Luther originally filed his complaint in the Henry County Circuit Court, stating that "Defendant has agreed to default provision of contracting in this matter and has failed [sic] specific performance of releasing liens and deeds and return of fees and notes and misapplied payments." Dkt. No. 1-5, p. 3.[1] Luther also seeks to quiet title "pursuant to title 55-66.5c and [for] return of fees and specific performance of default provisions agreed to by defendants." Id. Attached to his complaint are two exhibits. Exhibit 1 is a letter Luther wrote on March 8, 2011 to John G. Stumpf ("Stumpf"), CEO of Wells Fargo. Dkt. No. 1-5, p. 16. Exhibit 2 is a second letter Luther wrote to Stumpf on or about June 13, 2011. Dkt. No. 1-5, p. 52. The first letter is a purported "qualified written request" ("QWR")[2] that seeks certain confirmation and information from Stumpf about Luther's loan with Wells Fargo. At the end of that letter, Luther wrote verbatim:

> WELLS FARGO BANK MR. JOHN G. STUMPF, CEO or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in JAMES THOMAS LUTHER or any property or collateral connected to JAMES THOMAS Luther or

---

[1] Defendants removed Luther's case to this court on March 16, 2016.
[2] These same letters were submitted in Luther's 2013 case and I determined that they were not QWRs as defined by statute. See Case No. 4:11cv00057, Dkt. No. 43, p. 12. However, they will be referred to as such in this opinion for the sake of consistency and identification only.

2

> account REDACTED and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

The letter continues by including a list of what appear to be Luther's demands. In a final section entitled "Power of Attorney," Luther wrote:

> When WELLS FARGO BANK MR. JOHN G. STUMPF, CEO fails by not rebutting to any part of this RESPA REQUEST WELLS FARGO BANK MR. JOHN G. STUMPF, CEP agrees with the granting unto JAMES THOMAS LUTHER'S unlimited Power of Attorney and any and all full authorization in signing and endorsing WELLS FARGO BANK MR. JOHN G. STUMPF, CEO's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement.

Exhibit 2 notes that Wells Fargo and Stumpf have failed to respond to the first letter and that this failure "is their admission that the 'Default Provisions under this QUALIFIED WRITTEN REQUEST' are in full effect." It appears Luther believes that by sending this letter to which Wells Fargo and Stumpf never responded, that Wells Fargo and Stumpf have agreed to Luther's demands and consented to granting him power of attorney over Wells Fargo's affairs. Luther's complaint itself is very brief and states that Defendants have agreed to these "default provisions" and that he seeks to quiet title to his property. The complaint is devoid of facts and instead contains fifty-eight pages of exhibits, including his state court notice of *lis pendens*, a notice of federal claim of common law lien, an application in the state court for a temporary restraining order, a proposed order to quiet title, a letter Luther wrote to Atlantic, and the letters noted above. Defendants have moved to dismiss Luther's complaint on *res judicata* grounds, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for failure to satisfy the minimum pleading requirements as enumerated in Ashcroft v. Iqbal, 556 U.S. 662 (2009), Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and Rule 8. Defendants also request that the court

3

deny any leave to amend the complaint because such amendment would be futile and would be made in bad faith.

## Motion to Dismiss

Res Judicata[3]

The doctrine of *res judicata* means that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 298 (1981). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, '[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'" Canterbury v. J.P. Morgan Acquisition Corp., 958 F. Supp. 2d 637, 645 (W.D. Va. 2013) (quoting Brown v. Felsen, 442 U.S. 127, 131 (1979)). *Res judicata* applies when there has been "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Nash Cnty. Bd. of Ed. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981).

Here, all three requirements have been met and *res judicata* bars Luther's claims. The first requirement has been met because Luther has brought two previous suits regarding the foreclosure of his home, both of which were dismissed with prejudice following a Rule 12(b)(6)

---

[3] As an initial matter, it is appropriate to consider a motion to dismiss on the grounds of res judicata, despite the fact that doing so requires the consideration of evidence outside the four corners of the pleadings. See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (finding it proper to consider res judicata at the motion to dismiss phase when it clearly appears on the face of the complaint); Thomas v. Consolidation Coal Co., 380 F.2d 69, 75 (4th Cir. 1967) (holding the same). When considering a motion to dismiss on the basis of res judicata, the court may take judicial notice of prior judicial proceedings when the res judicata defense raises no disputed issue of fact. Andrews, 201 F.3d at 524 n.1 (citing Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992); Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984); Briggs v. Newberry County Sch. Dist., 838 F. Supp. 232, 234 (D.S.C.1992), aff'd, 989 F.2d 491 (4th Cir. 1993)). Luther raises no disputed issue of fact in his complaint; the issue he appears to raise is purely one of law, i.e., whether Luther's letters to Wells Fargo operate to relinquish Wells Fargo's legal interest in his property. Therefore, consideration of the res judicata defense is appropriate at the motion to dismiss phase of this case.

4

motion to dismiss.[4] The third requirement has also been met because Luther's 2013 case named both Wells Fargo and Atlantic as defendants, the same parties named in the instant case.

As for the second requirement, the court uses a transactional approach to determine whether a plaintiff's "new" claims in a subsequent lawsuit are barred under *res judicata*. "[T]he appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Keith v. Alridge, 900 F.2d 736, 740 (4th Cir. 1990) (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)). A plaintiff who could have brought his claims in a prior proceeding but did not is barred from bringing tharose claims in a subsequent action if those claims arose out of the same transaction. Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 164 (4th Cir. 2008); Canterbury, 958 F. Supp. 2d at 645; see also Brown, 442 U.S. at 131 (holding that "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.").

Luther's claims in all of his cases have arisen from the foreclosure proceedings involving his home at 2194 Dogwood Lane in Fieldale, Virginia. The cases all revolve around the same promissory note, the same deed of trust, the same property, and the same purpose: to stop Wells Fargo from foreclosing on Luther's property. Though Luther's theories of recovery are slightly different in this case, nothing would have prevented him from bringing an action to quiet title in either of his other two cases. More importantly, the letters Luther argues form the basis of his claims in this case existed and were filed with the court in his 2011 case. See Case No. 4:11cv00057, Dkt. No. 3-1. Luther could have alleged a claim based on the letters in the prior case, but he did not. This case arises from the same transaction as the 2011 and 2013 cases,

---

[4] A Rule 12(b)(6) dismissal with prejudice operates as an adjudication on the merits for purposes of *res judicata*. See McLean v. U.S., 566 F.3d 391, 396 (4th Cir. 2009) (accepting that a dismissal under Rule 12(b)(6) is an adjudication on the merits).

5

involves the same parties as the 2013 case, and purports to allege claims that could have been brought previously. The prior cases were dismissed with prejudice. Accordingly, Luther's claims in this case are barred by the doctrine of *res judicata*.

Rule 12(b)(6) and Rule 8(a)

Even if res judicata did not bar Luther's claims, Luther's complaint would be dismissed for failure to state a claim under Rule 12(b)(6) because his complaint is utterly lacking in facts to support whatever claims he is attempting to make.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. at 679. The court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. Phillips v. Pitt County Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). However, "legal conclusions, formulaic recitation of the elements of a cause of action, or bare assertions devoid of further factual enhancements fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678)).

Plaintiffs must plead enough facts to "nudge[ ] their claims across the line from conceivable to plausible," and if the claim is not "plausible on its face," it must be dismissed. Twombly, 550 U.S. at 570. This plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence" supporting the plaintiff's claim. Id. at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Allegations made in a pro se complaint are to be "liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal citation omitted). Notwithstanding this obligation, the court is not required to accept a pro se plaintiff's contentions as true, Denton v. Hernandez, 504 U.S. 25, 32 (1992), and cannot ignore a clear failure to allege facts positing a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). Moreover, the court does not act as the pro se plaintiff's advocate, sua sponte developing statutory claims that the plaintiff failed to clearly raise on the face of the complaint. Id. ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

Luther's complaint is barely more than a single page consisting of two paragraphs entitled "statement of facts" and "demand for relief." See Dkt. No. 1-5, p. 3. The statement of facts in its entirety reads:

> Plaintiff alleges discharge of debt by defendants relating to deed of trust/mortgage and an unjustifiable non release of deed, exhibit 4. Defendant has agreed to default provisions of contracting in this matter and has failed specific performance of releasing liens and deeds and return of fees and notes and misapplied payments see exhibit 1 and 2 attached. This contracting between Plaintiff and Defendant has been verified by Western District Federal Court. See exhibit 3.

His demand for relief is equally terse, and states:

7

> The court to quiet the Title pursuant to title 55-66.5c and return of fees and specific performance of default provisions agreed to by defendants including return of original notes/monetary instruments or certified check for value thereof, return of misapplied payments, bonds or liability insurance for John Stumpf, CEO of Wells Fargo, defendant.

Luther's complaint is essentially devoid of any discernible facts and leaves the court to fill the factual void based on Luther's litigation history, the exhibits attached to his complaint, and his responses to the motion to dismiss.[5] Even construing the complaint by the liberal standards afforded to pro se litigants, it fails to meet Rule 8(a)'s requirement that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(6) will be **GRANTED**.

Dismissal with Prejudice

Federal Rule of Civil Procedure 15(a)(2) governs any requests to amend a complaint, and requires that leave be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should only be denied when permitting an amendment would be prejudicial to the opposing party, there has been bad faith on the part of the movant, or when the amendment would be futile. Laber v. Harvey, 438 F.2d 404, 426 (4th Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

This court has reviewed and rejected similar claims from Luther on two prior occasions. In both of those cases, Luther's claims were dismissed with prejudice. See Luther v. Wells Fargo Bank, Case No. 4:11cv00057, 2012 WL 4405128 (W.D. Va. Sept. 25, 2012) (adopting the magistrate judge's recommendation to dismiss the case with prejudice); Luther v. Wells Fargo Bank, N.A., Case No. 4:13cv00072, 2015 WL 1580982 (W.D. Va. Apr. 9, 2015) (adopting for a

---

[5] In deciding a motion to dismiss, the court must look at the complaint and its exhibits, not the factual allegations raised for the first time in the plaintiff's briefs. See Dickey v. Greene, 729 F.2d 957, 958 (4th Cir. 1984) (holding that it was error for the court to consider matters not pleaded in the complaint at the motion to dismiss stage).

second time the magistrate judge's recommendation and dismissing the case with prejudice). Luther has had ample time and opportunity to perfect any claims he may have had against the defendants. He has been litigating his cases for approximately five years with no success whatsoever, despite previous orders granting him leave to amend his complaints. More importantly, Luther's claims have already been dismissed with prejudice; any amendment he would be allowed to make would be futile because his claims would again be barred by the doctrine of *res judicata*. Accordingly, I will **GRANT** the defendants' motion to dismiss this case with prejudice.

## Motion for Pre-Filing Injunction

Pre-filing injunctions are not favored, and "must be used sparingly" in light of the Fourteenth Amendment. Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 817 (4th Cir. 2004). Courts considering issuing a pre-filing injunction must consider the constitutional guarantees of due process and the right of access to the courts, as this right "'lies at the foundation of orderly government.'" Id. (quoting Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142, 148 (1907)). Requests for pre-filing injunctions against a pro se plaintiff "should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts." Cromer (quoting Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir. 1980)). A judge should not restrict a litigant's right of access to the courts except in exigent circumstances "'such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions.'" Cromer, 390 F.3d at 818 (quoting Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)).

When considering whether to impose such an injunction, a court must weigh and discuss the following factors: (1) the party's history of litigation, including whether he has filed

9

vexatious, harassing, or duplicative lawsuits; (2) whether the party has a basis for pursuing the litigation or simply intends to harass; (3) the extent of the burden on the courts and other parties as a result of the party's filings; and (4) the adequacy of alternative sanctions. Cromer, 390 F.3d at 818 (internal citations omitted). Any resulting injunction must be "narrowly tailored to fit the specific circumstances at issue" and cannot impose a blanket ban on any and all filings within a district. Id. (quoting Brow, 994 F.2d at 1038); see also Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) (finding an injunction too broad when it barred a plaintiff from filing any action in any related litigation). Finally, any litigant facing the possibility of a pre-filing injunction must be given notice and an opportunity to be heard on the matter. Cromer, 390 F.3d, at 819 (citing Brow, 994 F.2d at 1038)).

The first Cromer factor requires a review of the history of Luther's litigation and whether he has filed vexatious, harassing, or duplicative lawsuits. I find that he has. This case represents Luther's third attempt to stop Defendants from foreclosing on his property. In both of the previous cases, Luther asserted unsupported theories in an attempt to absolve himself of the duty to repay his mortgage. Luther has previously claimed that Wells Fargo violated multiple federal statutes and that it had committed fraud. All of these claims were baseless and both prior cases were dismissed with prejudice, with one of the dismissals affirmed by the Fourth Circuit Court of Appeals. Luther is again attempting to delay or prevent the foreclosure of his property despite the fact that over the past five years, he has failed to state a lawful basis for doing so. At this point, I cannot but conclude that Luther's repeated filings are duplicative and vexatious, and that they are filed with an intent to harass.

The second Cromer factor requires consideration of whether Luther has a basis for continuing his litigation, or whether he intends to harass the defendants. Luther has no legal basis

for contesting the foreclosure of his property and he has failed to put forth any lawful reason why the foreclosure should not take place, despite the fact that he has had five years to come up with a viable theory. While Luther's first case may have been brought with a good faith belief that he was entitled to relief, I cannot conclude that after a substantial period of time and multiple dismissals with prejudice that Luther can maintain any sort of good faith basis for continuing this litigation. Accordingly, I must conclude that he continues to file suit against the defendants solely for the purpose of harassing them.

The third factor considers the burden on the courts and the opposing parties triggered by Luther's repeated filings. Luther's filings have created a significant burden on the opposing parties, requiring Wells Fargo and Atlantic to respond to multiple motions, attend hearings, engage in discovery, litigate an appeal, and expend time and money defending Luther's repeated baseless litigation. Luther's various pleadings included motions to set aside judgments, proposed orders quieting title and ordering the return of fees, requests for restraining orders, and a non-sensical "Federal Claims of Common Law Lien and Notice of Federal Common Law Lien and Writ of Attachment" all of which required a response and thus the time and attention of the opposing party. The court, too, has expended a vast amount of time and resources reviewing, researching, and handling Luther's cases. This expenditure serves no valuable purpose and takes away time better spent on legitimate matters.

The final <u>Cromer</u> factor considers the adequacy of alternative sanctions. While there have been no previous sanctions imposed against Luther, I am confident that a simple order to cease filing frivolous motions or a monetary sanction would be inadequate. Luther has a history of disobeying court orders and local rules regarding briefing schedules and filings. For example, in his 2011 case, Luther continued to docket pleadings after his case was dismissed and after the

11

district court denied his motion to set aside the judgment. See Case No. 4:11cv00057, Dkt. No. 50. He did the same thing at the Fourth Circuit when he continued to file pleadings in that case almost a month after the court had issued its opinion denying his appeal. See Order at 1, Luther v. Wells Fargo Bank, N.A., (No. 15-1539), Dkt. Nos. 32–34. In this case, Luther filed a sur-reply without first obtaining leave of court. See Dkt. No. 20. Finally, Luther filed this case despite previous court orders dismissing his case with prejudice and finding no basis for relief. A simple order to follow the rules going forward will not be sufficient.

I also find that the imposition of a monetary sanction would likewise be insufficient to deter Luther from filing frivolous or vexatious lawsuits. In a previous hearing, Luther admitted under oath that, in an attempt to pay the balance of his mortgage with Wells Fargo, he wrote a letter to Dr. Janet Yellen (the former head of the San Francisco branch of the Federal Reserve Bank) and sought her permission to pay off his loan using Federal Reserve funds. See Transcript of Oral Argument at 32, Luther v. Wells Fargo Bank, N.A., Case No. 4:13cv00072 (W.D. Va. Jan. 16, 2015), Dkt. No. 72. When he received no response from Dr. Yellen, he interpreted that as her acquiescence and proceeded to create a check using the San Francisco Federal Reserve's routing number, which he then tendered to Wells Fargo in purported satisfaction of his mortgage debt. Id. 33. Based on Luther's questionable response to Wells Fargo's request for payment, I find that the imposition of any monetary sanction would fail to deter Luther from repeated filings, and that a pre-filing injunction is the only way to assure his compliance with court rules that prohibit the filing of meritless pleadings.

Finally, I find that Luther has received adequate notice and opportunity to be heard on Defendants' request for a pre-filing injunction. In their motion for the injunction (which was filed on March 16, 2016), Defendants included a bold-print, underlined notice which read "[t]he

12

plaintiff is hereby on notice that defendants have requested the court to enter a pre-filing injunction. The plaintiff is hereby afforded this notice and provided an opportunity to be heard on this issue." Dkt. No 7. Luther responded to this motion and specifically mentioned the pre-filing injunction request in his response. Dkt. No. 16. He also filed a sur-reply referencing the motion for pre-filing injunction. Dkt. No. 20. Neither side has requested a hearing in this case, but both have had ample opportunity to do so. I find that Luther has been afforded the notice and opportunity required by the Cromer decision, and that the imposition of a pre-filing injunction is necessary to assure the orderly management of the court's docket and the protection of the defendants from harassing litigation.

I will tailor the pre-filing injunction narrowly to require that Luther obtain permission to institute any action against the defendants in this case relating to the foreclosure of his home at 2194 Dogwood Lane in Fieldale, Virginia.

## Conclusion

Luther's instant complaint constitutes his third attempt to delay or prevent the foreclosure on his property. Because it is his third attempt at litigating the same set of facts presented in his previous two law suits, his claims are barred by *res judicata*. Even if they were not, Luther's complaint fails to state a claim under Rule 12(b)(6) and does not meet the pleading requirements outlined in Rule 8(a). Therefore, Defendants' motion to dismiss on these grounds will be **GRANTED** in an accompanying order.

I have evaluated Defendants' request for a pre-filling injunction under the Fourth Circuit's decision in Cromer and find that a pre-filing injunction is warranted in this case. Accordingly, Defendants' motion for a pre-filing injunction will be **GRANTED** in an accompanying order.

Entered: July 15, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge